on behalf of Petitioner Rick Wilson. I'm intending to save about two minutes for a rebuttal. There's one certified issue in this habeas action, that's whether Rick Wilson's right to a jury trial was violated when the trial court determined with respect to his prior conviction that Wilson personally inflicted great bodily injury on a person other than an accomplice. His prior conviction involved two offenses, one of gross vehicular manslaughter with respect to a person who was killed. That is not at issue in this case. The second that is at issue is his conviction for driving under the influence while proximately causing bodily injury to Deborah Horvath. That's the conviction and the judge's extra findings that we contend violate the holding of apprendi that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. What essentially what the trial court did here was while Mr. Wilson was convicted of one offense, it found an entirely new offense to make the prior conviction qualify as a strike. And that is clearly prohibited by apprendi. In fact, there's a specific California statutory provision, California Penal Code 12022.7a, that provides for a three-year enhancement to an offense under the circumstances if the person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony. This enhancement was not charged. It was not pled. It was not proven. But that's what essentially the trial court found years later with respect to Mr. Wilson's DUI offense to drastically increase the penalty up to a three-strike sentence. You're saying that a jury rather than the judge should have made those findings. Is that right? Yes. Now, they say even if that's true, that error was harmless. What do you say to that? Well, in terms of a harmless error, I think there's two reasons why that's not true in this case. One is there's two essential findings here. One is that in the prior conviction, they had the conviction itself established that there was bodily injury and that he proximately caused the injury to another person. To make it a strike, the additional findings was not that it was bodily injury, but it was great bodily injury and that he personally inflicted the injury on someone who was not an accomplice. Well, let's take the great bodily injury first. It's really uncontested, isn't it, that she suffered great bodily injury, that she was in the hospital for almost two weeks? You know, it was uncontested because it was not an issue. There was no reason to contest it. There was nothing presented. Okay. So on the record, the evidence is uncontradicted that she suffered great bodily injury. Yes. I think she was hospitalized. She testified she was hospitalized for a number of days. But there was no medical records introduced. I think if the question is, is it clear that a jury would find beyond a reasonable doubt that she suffered great bodily injury, she had some reasons for bias and reasons not to be entitled. Well, she was in the hospital, what, 10 days, 12 days? That's what she testified to. Well, but it was not contradicted, was it? She wasn't, but there was no reason to. All right. So this is what we're stuck with. Right. And as far as whether he personally caused it, I understand that's a little more problematic. Right. And two reasons here. One is that I think there's one is that there's evidence in the record, the dissenting judge in the California Court of Appeals referred to it, that Deborah Horvath grabbed the steering wheel and would be an accomplice. Mr. Wilson himself, the first person he talked to after the accident, he said that she grabbed the steering wheel. But there was also other evidence in the record that the car overcorrected, that that kind of suggested that someone grabbed the steering wheel. The second reason that she could be considered an accomplice, regardless of whether she grabbed the steering wheel or not, is under the California case law of Berlindi, which is cited in my reply brief, in both briefs, talks about that someone can be an accomplice just by encouraging an intoxicated person to drive. And in this case, there was testimony, she testified, that she was driving initially, but then she threw the keys to him and said he drove. When his blood alcohol level was tested later on after the accident, it came back at .21. So there would be, under both of those two rationales, the fact that she grabbed the steering wheel, there was evidence of that. And under the case law, that could make her an accomplice. And then second, just by giving him the keys when she knew that he was intoxicated could make him an accomplice. Well, going back to the question of whether or not there was an appended violation, we are testing where we look at it under AEDPA, right? Right. And the real issue here is the scope of volunteer stories. How much about the prior conviction is excluded from appending? Right. And what do you do with our opinion in Cassie? Well, Cassie Mendoza is a much different case, because it had to do with the defendant's probationary status. So I think that one is a Well, it's a different case in that way, but I thought what we said there is that there are sort of two views as to what our story means. One of them is the mere fact of the prior conviction. Do you have a conviction? Do you not have a conviction? And the second way of looking at it is anything having to do with the prior conviction as opposed to the current conviction falls within our stories. And I thought we held that it is not unreasonable. There's no Supreme Court authority saying that the narrower view is required. Well, I wouldn't go that far to say that the Court went that far in Cassie Mendoza. What it did say is the precise contours of the Elmendorz-Torres exception have not been defined. Both Butler and Cassie Mendoza held that whether or not a defendant was on probation was not covered by the Elmendorz-Torres exception, though Cassie said it was not dictated by clearly existing precedent. But this case is much different than looking at court documents and what the sentence was or what the conviction was. In this case, it's like the defendant being convicted of shoplifting and then the judge finding later he was convicted of armed robbery by making additional findings during the fact and basically creating a whole different offense. And that's not covered by Cassie. In fact, I think it's – Well, it's covered by the rationale of Cassie, isn't it? It's a different case, and I agree with you. But for Cassie, we might – or what the rationale of Cassie was, we might treat him differently. But didn't Cassie say essentially this is a gray area, we come out this way, but it's not required by Supreme Court precedent? And if that itself is a holding that it's not required by Supreme Court precedent, then we're in EDPA land. And can we really say that the State court violated EDPA? Well, Cassie said all those statements in the context of whether the defendant's probationary status. There was another finding at issue that Cassie expressly said in a footnote it did not reach, and that's whether the prior convictions were increasingly serious. Because that's a different question, and that's closer to our question. But ours is even right in the core of Apprendi is – and there's language in Butler that Cassie didn't touch about the qualitative nature of prior convictions and the facts of those offenses as being under the core of Apprendi and not the Almendore-Torres exception. I'm going to save my last 40 seconds for rebuttal. Thank you. Thank you. May it please the Court. Peggy Ruffray for Respondent. We believe that this Court's holding in Cassie is binding in this case. The very first sentence of Cassie is, What is the scope of the prior conviction exception to the general rule that a sentencing judge may not make factual findings that increase the statutory maximum criminal penalty? The Supreme Court has not yet answered that question. Now, Cassie didn't suggest that there was some sort of Supreme Court law on some of the facts of the prior convictions. If there is a Supreme Court law, then the State court's approach cannot be contrary to Supreme Court law. What do you think Apprendi actually – what's the holding of Apprendi as far as you're concerned that we would be bound by? Well, Apprendi is actually a totally different situation that didn't have to do with prior convictions at all. Apprendi was about the facts of the current crime. The judge made a determination that in the commission of the current offense, the defendant also committed the arson for purposes of a hate crime. So the judge was sitting there during the jury trial and then made that additional factual finding, which increased the sentence. But it had nothing to do with the prior conviction at all. And Apprendi is the only Supreme Court case that had been decided in this area of law at the time that this case became final. So clearly Apprendi itself does not speak to this case at all. Let me ask you a hypothetical. Suppose this were a death penalty case and the jury had to make the findings that the – or someone had to make the findings that the judge made here. Who would make those findings? Could the judge do that or would a jury have to do that? I'm not sure I understand. You mean for purposes of – Of sentencing. By mitigating and aggravating circumstances. Find, for example, an aggravating circumstance that great bodily injury had been caused before, something like that. I'm not positive because the finding in this case was simply for purposes of the strike statute. So there are actual statutory elements to qualifying as a strike that that's what the judge was looking to. In the death penalty context, aggravating and mitigating factors are not quite so statutory. It's not the elements of the offense in that same way. Here, there's an actual statute that says these crimes qualify if the defendant inflicts great bodily injury. And I can tell you that the district courts of this circuit have consistently held, even before Kessy, but certainly after Kessy, that this exact type of situation, whether a prior conviction qualifies as a strike, they have held that there is no Supreme Court authority that prevents the States from allowing the trial judges to do that. So it's a fairly common event. And if you look at People v. McGee, that's the California Supreme Court case that I think is the closest to this case, where they actually found that the trial court could consider whether a prior conviction qualifies as a strike. So there we do have the same situation that we have here. And they very carefully went through all of the California and U.S. Supreme Court authority and said, we don't read Apprendi or any of these other cases as preventing trial judges from making these kinds of determinations. It may be that the Supreme Court will later tell us we're wrong, but at the moment, unless and until we're instructed differently, this is how we read it. So these other cases that you're referring to, do they refer to, do they concern a judge taking testimony about the facts of the underlying crime, or are these cases where the judge just says, I see you've been convicted, you know, historically of first-degree murder in the past, something like that? There is an absolute preclusion on taking additional testimony about the prior conviction. Under California law, you're strictly limited to the record of conviction. So that does include the preliminary hearing testimony, where there is sworn testimony from witnesses about what happened. But they can't go beyond that. And there's a number of California cases that say that. Guerrero, Reed, McGee. So that issue has been litigated in the California Supreme Courts, and it is limited. So wasn't there testimony taken in this case after the? Oh, there was a sentencing hearing. That's what I'm talking about. Yes. There was a sentencing hearing where witnesses simply testified to the defendant's good character and so forth, but. Didn't Deborah Hobart testify? She did testify. But the finding of whether the prior conviction qualified as a strike, that had already been determined at that point. She was simply testifying as a witness that she thought a particular sentence would be appropriate. The judge didn't base his findings on whether this qualified as a strike. On that, that sentencing hearing testimony, it was strictly based on her preliminary hearing testimony from 1993, where. Was Wilson convicted of inflicting great bodily injury on her? He – the crime, as it stated, was proximately causing bodily injury. No, my question, was he convicted of inflicting great bodily injury on her? No, that's – that wasn't a part of the element of the original crime. So he was never convicted of this crime? He was not convicted of a crime that involved great bodily injury. That was the phrase of the conviction. All right. But even though he was not convicted of it, you say it can count as a strike? Correct. Why is that? Because the trial court was entitled to look at the record of the prior conviction and no further, and determine whether that was established on the record, which it clearly was in this case. The victim was – But the issue was not tried in the earlier case. It was just – it was a plea. That was it. No. Well, there was a preliminary hearing. There was no reason for – there was no trial. Well, they were entitled to cross-examine her about any issues. And although the Petitioner has argued that there was no medical corroboration, that simply is not required under California law. And a person can testify whether she was knocked unconscious, was in the hospital for 13 days, broke her wrist, had to have physical therapy on her shoulder, was injured in all the other places. The defendant was going 90 miles an hour while his blood alcohol level was .20. He rolled the car. She was a passenger in the car. When they found her, the seat belt was wrapped around her neck and she was unconscious and she didn't wake up until she was in the hospital later. The first officer who contacted her said she could barely speak because she was in excruciating pain. So clearly the element of great bodily injury was established here. And they might have been able to charge it and prove it, but they didn't. Well, for purposes of this question of whether a judge or a jury could make that determination, California has decided that the Court is entitled to look simply at the court records and here it was sworn testimony. But nobody made it in the original case, so we never was convicted of it. Well, that's why there had to be an additional finding made by the judge in this case. But did that violate the Sixth Amendment? Where is the clearly established Supreme Court law that says that a State court can't do that? That doesn't exist, as the Court recognized in Kessy. And the Ninth Circuit has taken a more restrictive view of the prior conviction exception, but in the absence of any explicit direction from the U.S. Supreme Court, most courts have actually gone the way of California. In fact, I noted when I was looking at this yesterday that in Santiago, a Second Circuit case that we cited in our brief, that was Judge Sotomayor, who was then on the Second Circuit, who wrote, We read Apprendi as leaving to the judge the task of finding not only the mere fact of previous convictions, but other related issues as well. So the lower courts have taken these different approaches. There's no express guidance from the U.S. Supreme Court, and therefore, the approach that was taken in this case can't be contrary to any clearly established law, because it simply doesn't exist. So under the State's view, I don't mean your personal view, under the view adopted by the State courts. Yes. That's what I mean by the State's view. If you have any crime, let's say pickpocketing, right, and while testifying, the victim says, and after he grabbed my wallet or purse, right, he knocked me down, I fell down the stairs, and I broke an arm. Not the person is not charged with the injury, but that statement alone would be enough to make this a qualifying offense under California law. The trial judge at the three strikes hearing could look through this offense, which itself is relatively innocuous, like pickpocketing. I mean, obviously it's a crime, but, I mean, it itself is not a crime that involves any injury, find something in the record that documents injury and say that that's enough. Is that about the State of California law? No, because there is a list of potentially qualifying offenses. So this is all statutory. So it's not like any crime at all, if there is also great bodily injury, then it's a strike. It doesn't work that way. There's the list of potential offenses, and then there are some where if there is also great bodily injury, then that will constitute a strike. Qualifies as a strike. Correct. And let me just pursue one other issue that you took up, or Ms. Zimmerman took up with you, and I just want to pursue it. You said quite categorically that she suffered great bodily harm. Yes. Now, I don't know the standard of California law, and I can certainly imagine and I have no idea because I haven't looked at California law on the subject, that, for example, State law might define great bodily harm as you had to have lost a limb or lost an eye or, you know, have something more than you went to hospital. Not that that wouldn't be sort of be great harm in itself, but State law could define it as requiring some sort of, you know, loss of bodily function, let's say, or permanent loss of bodily function. How do we know, or how does that, how do we know that, in fact, this was great bodily harm as California law defines it? Well, of course, it does have to be tied to the definition of great bodily injury under California law, and we've described that in our brief, and it does not, in fact, require a serious or permanent injury. And I have some cases in my brief that give examples of what qualifies as great bodily injury. But more to the point, the actual issue that was raised in this case on direct appeal was whether there was sufficient evidence of great bodily injury to qualify as a strike. And the California court of appeal compared this case to other State law cases and said, we clearly find that there was sufficient evidence. But those were cases where the jury had, in fact, found the existence of great bodily harm. Well, that's a separate issue, and I thought your question went to simply whether there was sufficient evidence of great bodily injury as defined by California law, and the State court said there was. But when you talk about sufficient evidence, there are actually two concepts. One of them is to say, is there sufficient evidence given the jury finding? So if the jury finds great bodily harm, would there have been a support for the jury? It's a different issue to say, is there sufficient evidence in the absence of a jury finding? Well, if there's sufficient evidence based on the record that's the case. But for one thing, you have to believe the witness. You have to, you know, let's just say the witness comes to court. You know, with an arm and a sling, you know, all of that has an effect on the jury, right? But if you don't have a jury finding, wouldn't we – wouldn't there have to be a finding that the jury would have necessarily have found great bodily harm? Like a harmless error inquiry. Well, I think, as I understand your argument, that circles back around to whether there was a Sixth Amendment right to a jury at all, or possibly to whether the error was harmless, which is whether any jury confronted with this evidence would have found that there was, in fact, great bodily injury. So I think you'd get to the same place either way, unless I'm misunderstanding your question, Your Honor. I guess one way or the other, you have to get to the question of would any jury have found that. Yes, I think so. Okay. Either during the original inquiry or during the harmless. And although he wasn't charged specifically with great bodily injury, he was charged with inflicting bodily injury, which he pled guilty to. And so there was this testimony at the preliminary hearing about the extent of her injuries. That was at issue. She testified. She was cross-examined. And there was no suggestion that she was lying or that there was any sort of, you know, impropriety with her description of her own injuries, which is a common description, especially these types of injuries where they are not soft-tissue injuries, but she broke her wrist, she was knocked unconscious, she had to have physical therapy on her shoulder, she had abrasions and bruises on her shoulder, eye, knee, foot, she was in excruciating pain. All of those are the kinds of injuries that are within a person's own knowledge. She described those at length and was cross-examined, but there was no suggestion that there was any impropriety with that whatsoever. Okay. Thank you. Thank you. I'll give you a minute for rebuttal. I think you're out of time, but I'll give you a minute for rebuttal. I just wanted to go back to your hypothetical. I guess you've got half a minute. So you have a minute and a half for rebuttal. Thank you. The hypothetical about pickpocketing, I think the respondent misspoke in terms of what the California law is. There's a set of enumerated felonies that are always going to be a strike, like a murder, and then there's a catch-all that says any felony where you personally inflict great bodily injury on a person other than an accomplice. So a pickpocketing, if it's a felony, and the judge- Let's say the wallet contained $500 or something like that. Right. So instead of pickpocketing, you say petty theft with a bribe. You put that in there, which is a felony offense. If the judge then makes these additional findings later on that even though it was just a petty theft, but there was great bodily injury personally inflicted on someone who's not an accomplice, then it becomes a strike. And finally, the attorney- It does certainly raise the stakes in objecting to the witness testifying as to anything other than the crime in question, right, the initial trial. Well, this is- A lawyer who doesn't object might well expose his- if he lets a witness go on. Yes. I mean, that was back in 1993. That was even pre-Apprendi, pre-a lot of different things. It was right after Sherman's March. It's, yeah, that's a different question. But one last point I wanted to make is that the Attorney General has mentioned that other courts have essentially gone in their favor. None of those involve the type of situation here where a person is convicted of one offense and then judge makes additional findings to find essentially an aggravated offense. All of those have to do with the sentence or some other particular aspect which is closer to Almodovar's torts. Was there a subpetition in this case? To the U.S. Supreme Court, I do not know. There was not, because it became final, 90 days, no. If we agreed with you, what would you be entitled to? Would he get a new sentencing trial? Is that what would happen or what? Yes. That's my position. And the – if we agreed with you, he'd get a new sentencing trial, and the judge couldn't make the findings. So what- Well, the question, I guess- This wouldn't come in, right? Right. The judge cannot make these findings. Under California law, the judge can't take more evidence. Right. So this would be out and he'd just get a- I guess there would be a question about whether they could make – have a jury make these findings now go to a new trial on this personally inflicted great bodily injury. I'm not sure how this would work. If they would introduce to the jury these documents that the judge looked at, is that what you- Well, I was thinking essentially allow both sides to present new evidence. I mean, if Apprendi – if the court rules that this violates the rules of Apprendi- Well, as a constitutional matter, there wouldn't be an impediment to that, but can you do it as a matter of state law? Well, and- Counsel told us that the sentencing judge in the state law can't even look at these documents and take additional evidence. Right. And it may have to be a modification from the laws that exist now as the standard procedures. Legislature would have to change or something like that, yeah, or possibly the state supreme court could, yeah. Okay. Thank you, counsel. Both very helpful arguments. Much appreciated. The case is argued, stand submitted. We are adjourned. All rise.
judges: Kozinski, Noonan, Silverman